## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ELAINE DEROSA, JOYCE WASHINGTON,
PAMELA MCBRIDE, ANA OLIVEIRA,
and EARL WEST, Individually and on behalf
of a class of persons similarly situated,

               Plaintiffs,

        v.

MASSACHUSETTS BAY COMMUTER
RAIL COMPANY and MASSACHUSETTS
BAY TRANSPORTATION AUTHORITY,

            Defendants.

**CASE NO.  07-11824-MLW**

## MEMORANDUM IN SUPPORT OF MOTION
## TO STRIKE CLASS ALLEGATIONS

An electrician, two coach cleaners, a car inspector, and a train announcer have filed this purported class-action against their employer, Massachusetts Bay Commuter Rail Company ("MBCR").  Each of the five plaintiffs identifies positions that he or she individually sought while employed by MBCR and characterizes the decision not to select him or her as discriminatory.  The plaintiffs ask this Court, not only for the right to join their individual claims in a single action, but also for the right to prosecute all discriminatory promotion claims of Black and Hispanic employees of MBCR in a sweeping class action.  The Court should deny that request.  The plaintiffs' claims neither share a common nucleus of operative fact nor satisfy the pleading requirements of Rule 23.  The class allegations should be stricken from the Complaint.

### Factual and Procedural History

Since July 1, 2003, MBCR has operated a commuter rail system in Eastern Massachusetts.  (Compl. ¶ 8.)  The five named plaintiffs – Elaine DeRosa, Joyce Washington,

Pamela McBride, Ana Oliveira and Earl West – are employees of MBCR.  (Compl. ¶¶ 3-7.) DeRosa is an electrician; Washington and McBride are coach cleaners; Oliveira is a coach inspector (a carman); and West is a train announcer/ticket agent.  (Compl. ¶¶ 3-7.)  During an unspecified period of time, the named plaintiffs unsuccessfully sought various promotions at MBCR.  DeRosa sought the positions of "foreman," "help desk," and "engineer"; Washington sought the position of foreman in the coach cleaners' department; McBride sought the positions of carman, machinist, ticket booth clerk, and foreman; Oliveira sought the positions of engineer, conductor, and foreman; and West sought the position of Station Supervisor.  (Compl. ¶¶ 16, 21, 24, 30, 34).  The plaintiffs claim that their failure to obtain these positions was discriminatory.

On September 26, 2007, the five named plaintiffs filed the Complaint "individually and on behalf of a class."  (Compl. ¶ 10.)  The plaintiffs attempt to state individual claims for disparate treatment under Title VII, M.G.L. ch. 151B, § 4, and 42 U.S.C. §1981; class claims for a "pattern and practice" of disparate treatment under Title VII, M.G.L. ch. 151B §4, and 42 U.S.C. §1981; and  individual and class claims for disparate impact discrimination under Title VII and M.G.L. ch. 151B, §4.  They ask the Court to certify a class comprising all "minority employees of the MBCR who have been denied promotional or advancement opportunity since 2005" under Fed. R. Civ. P. 23(a) and 23(b)(2) and (3).  (Compl. ¶¶ 10, 36, prayer for relief.)

Based on the allegations in the Complaint, and "documents fairly incorporated therein," defendant MBCR moves to strike the plaintiffs' class allegations.  *Nisselson v. Lernout*, 469 F.3d 143, 147, 150 (1st Cir. 2006).  The plaintiffs have failed to meet their burden of pleading facts sufficient to show compliance with Rule 23.

**Argument**

2

231016.1

To safeguard the due process rights of absent class members and to preserve judicial efficiency, "[a] district court must conduct a rigorous analysis of the prerequisites established by *Rule 23*" before allowing any Title VII complaint to proceed on a class basis. *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *accord Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985); *Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 62-63 (D. Mass. 2001) (Wolf, J.).

Even at the pleadings stage, the plaintiff must make a plausible showing that the purported class will satisfy the requirements of Rule 23. *See, e.g.*, *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations."); *Moore Video Distribs., Inc. v. Quest Entm't, Inc.*, 823 F. Supp. 1332, 1338 (S.D. Miss. 1993) ("Plaintiff must make a prima facie showing in its pleading that it satisfies rule 23."); *Hedgepeth v. Blue Cross & Blue Shield*, 2006 U.S. Dist. LEXIS 3177 (N.D. Miss. 2006) (same).

"If a plaintiff fails to allege sufficient facts to show the requirements under Rule 23 have been met, then pursuant to Rule 23(d)(4), the court can order that 'the pleadings be amended to eliminate allegations regarding the representation of absent persons . . . .'" *Ross-Randolph v. Allstate Ins.*, 2001 U.S. Dist. LEXIS 25645 (D. Md. 2001); *accord Henry v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 57822 (E.D. La. 2007). As the Supreme Court recognized in the seminal case of *General Telephone Co. v. Falcon*, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ." 457 U.S. 147, 160 (1982). Numerous courts have granted motions to strike class allegations before requiring the defendant to undergo discovery. *See, e.g.*,

3

*Lumpkin v. E.I. DuPont de Nemours & Co.*, 161 F.R.D. 480, 482 (M.D. Ga. 1995); *Bennet v. Nucor Corp.*, 2005 U.S. Dist. LEXIS 44117 (E.D. Ark. 2005); *Dodd-Owens v. Kyphon, Inc.*, 2007 U.S. Dist LEXIS 79068 (N.D. Cal. 2007); *Thompson v. Am. Chain & Cable Co.*, 84 F.R.D. 406, 407 (D. Conn. 1979); *see also Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) ("Federal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation.").

The class allegations in this case should be stricken under these standards.  The plaintiffs simply recite the requirements of Rule 23 in a single paragraph of the Complaint without attempting to link those requirements to the facts of this case.  (Compl. ¶ 10.)  Such "conclusory allegations which parrot Rule 23 requirements" cannot justify  putting MBCR to the burden of class-wide discovery and a drawn-out class certification process.  *Stubbs*, 224 F.R.D. at 674; *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-69 (May 21, 2007) (holding that, to state a claim for relief, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95-96 (1st Cir. 2007) (noting that *Twombly* announces the standard of review for motions to dismiss); *Chester v. State Farm Fire & Cas. Co.*, 2007 U.S. Dist. LEXIS 46793 (E.D. Tenn. 2007) (adopting the "majority practice of applying the Rule 12(b)(6) standard of review to motions to strike class allegations").

Even attempting to discern relevant facts from the plaintiffs' more general discussion of the case, the plaintiffs fail to adequately allege compliance with Rule 23.  To proceed as a class action, a suit must satisfy the four elements of Rule 23(a) and one element of Rule 23(b).  *Smilow*, 323 F.3d at 38.  The plaintiffs' claims do not satisfy those requirements.

4

## I.     The Plaintiffs' Claims Do Not Satisfy the Four Requirements of Rule 23(a).

Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### A.     The Plaintiffs Have Not Adequately Pled Numerosity.

The plaintiffs have failed to establish the first Rule 23(a) requirement – numerosity – and that failure is fatal to their attempt to institute a class action.  The First Circuit has held that a court may properly dismiss the class action counts of a complaint because "the plaintiff has failed to establish the existence of a class so numerous that joinder of all members [would be] impracticable."  *Makuc v. Am. Honda Motor Co.*, 835 F.2d 389, 394-95 (1st Cir. 1987) (upholding dismissal after discovery where "the plaintiff's contention as to the size of the class was purely speculative").  The named plaintiffs in this case allege in conclusory fashion: "[t]he class is so numerous that joinder of all members is impracticable."  (Compl. ¶ 10.)  They plead no facts to show that this conclusion is merited.  They do not, for example, attempt to quantify the number of "Black and Hispanic employees of the MBCR who in the last several years have applied for promotions or advancement."  (Compl. ¶ 36.)  Nor do they specify what proportion of those applicants they contend were improperly denied promotion *because* of their race.  And, the plaintiffs never estimate how many of these disappointed minority applicants sought promotions under circumstances similar to their own.  (This last group comprises the only employees the named plaintiffs could represent in a class action under Rule 23.)  The plaintiffs' conclusory allegation that the numerosity requirement is met fails to satisfy the plaintiffs' burden, even under the relatively lenient pleading standards.  *See Stubbs*, 224 F.R.D. at 674 (emphasizing that

231016.1

courts should not rely on "conclusory allegations which parrot Rule 23 requirements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."); *see also Twombly*, 127 S. Ct. at 1964-69 (insisting that a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Rodriguez-Ortiz*, 490 F.3d at 95-96 (applying *Twombly*).  The failure to establish a basis for numerosity is grounds for striking the Complaint's class allegations.  *See, e.g.*, *Lumpkin*, 161 F.R.D. at 482 (granting motion to strike class allegations).

### B.    *The Plaintiffs' Claims Lack Commonality.*

The plaintiffs' claims also fail to satisfy the second requirement of Rule 23(a) – commonality.

#### 1.    *The Class's Claims Lack Factual Similarity.*

The purported class is not united by any common set of facts.  In the words of the Supreme Court, class certification is "appropriate [when] it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also Tilley v. TJX Co.*, 345 F.3d 34, 42 (1st Cir. 2003) (noting that Rule 23(a) requires enough similarity between class members' claims to give rise to *stare decisis*).  To survive a motion to strike based on commonality, therefore, the plaintiff must allege a nucleus of facts common to the class which (if proven) would give rise to a legal claim for each member of the class. *See Ramos v. Proulx*, 1987 U.S. Dist. LEXIS 2218 (D. Mass. 1987) (holding that commonality and typicality requirements are not met where "the class for which plaintiffs seek certification is composed of several sub-classes, each of which presents distinct factual circumstances and legal claims"); *see e.g.*, *Lumpkin*, 161 F.R.D. at 482 (granting motion to strike

class allegations on basis of commonality); *Dodd-Owens*, 2007 U.S. Dist. LEXIS 79068 (same); *Thompson*, 84 F.R.D. at 407-08) (same).

The plaintiffs' allegations (taken as true) do not establish commonality.  The plaintiffs baldly state that "there are questions of law or fact common to members of the class."  (Compl. ¶ 10.)  The Complaint does not, however, allege facts shared by all members of the class that would, if proven, give rise to a claim of discrimination.  Each of the purported class members in this case is currently employed by MBCR and each has applied for promotion at some time during their employment.  (Compl. ¶¶ 16, 21, 24, 30, 34.)  Beyond that very general level, however, their claims diverge.  They did not all apply for the same specific promotion or seek the same job responsibility.  *Id*.  Rather the purported class encompasses every job position and spans every department at MBCR.  (Compl. ¶¶ 1, 36.)  The positions purportedly sought by the class do not all require the same qualifications.  Rather those positions include job functions as diverse as driving the train, maintaining the track, repairing mechanical and electrical systems, collecting tickets, supervising large and small numbers of employees, and providing secretarial support.  The skills needed to adequately perform these functions are correspondingly diverse.  The promotions allegedly sought by the class are not all unionized, but also include "managerial positions at the MBCR."  (Compl. ¶ 1.)  Nor have the plaintiffs identified any individual or group of individuals as being involved in most, never mind all, of the disputed promotion decisions.

Under these circumstances, there is factually nothing common to unite the class.  *See Ramos*, 1987 U.S. Dist. LEXIS 2218 (holding that commonality and typicality requirements are not met where  the plaintiffs "challenge a wide variety of . . . actions . . . that have, besides their alleged discriminatory impact, little in common"); *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435

F.3d 639, 644 (6th Cir. 2006) (holding that mere fact that all class members allege defendant

violated Title VII is not enough to supply commonality because, "[i]f th[at] were the test, every

plaintiff seeking to certify a class in a Title VII action would be entitled to that certification");

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 571 (6th Cir. 2004) ("Because class members

have such different jobs, we find it difficult to envisage a common policy regarding promotion

that would affect them all in the same manner."). The limited number of courts who have

certified broad classes post-*Falcon* have identified some particularly unified aspect of the

defendant's decision-making process. *See, e.g.*, *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1226-

27 (9th Cir. 2007) (certifying class encompassing more than one million employees on basis of

evidence that company was "highly centralized" with "uniform personnel and management

structure across stores" and "a single system of oversight"); *Rossini v. Zukofsky*, 798 F.2d 590,

598 (2d Cir. 1986) (ruling that class should have been certified where "evidence was offered to

show that many of the decisions affecting employees opportunities for transfer, training and

promotion were made by the same, central group of people"). The plaintiffs in this case have not

identified any such unifying factor, and it would be hard to envisage any class as broad as

plaintiffs seek to draw ever meeting the Rule 23 (a) (2) standard.

### 2.        *The Plaintiffs' Disparate Impact Claims Do Not Supply Commonality.*

The plaintiffs' legal claims also do not supply commonality. The plaintiffs have not

alleged facts to support a class-wide claim for disparate-impact discrimination. The First Circuit

described the facts needed to establish a prima facie case of disparate impact in *EEOC v.*

*Steamship Clerks Union, Local 1066*:

> In the disparate impact milieu, the prima facie case consists of three elements:
> identification, impact, and causation. First, the plaintiff must identify the
> challenged employment practice or policy, and pinpoint the defendant's use of it.
> Second, the plaintiff must demonstrate a disparate impact on a group characteristic,
> such as race, that falls within the protective ambit of Title VII. Third, the plaintiff

must demonstrate a causal relationship between the identified practice and the disparate impact.

48 F.3d 594, 601 (1st Cir. 1995) (citations omitted); *see also Donnelly v. Rhode Island Bd. of Governors for Higher Educ.*, 110 F.3d 2, 5 (1st Cir. 1997).

The plaintiffs have not satisfied the first element of such a *prima facie* case: the identification of a class-wide "employment practice or policy."  To proceed under the disparate impact model, a plaintiff must "focus on a specific practice" as having led to a particular disparate impact.  *See LUCHA v. Sec'y of Hous. & Urban Dev.*, 799 F.2d 774, 786-87 (1st Cir. 1986).  "Without the threshold of a specific, facially-neutral procedure (or possibly, a combination of procedures), the disparate impact test is simply a stripped-down version of the discriminatory treatment test . . . that simply drop[s] the requirement of intent."  *Id.*  Neither the First Circuit nor the Supreme Court has ever adopted such a watered-down test.  *See id.*; *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656-58 (1989).

Far from identifying "a specific practice – objective *or* subjective – that allegedly caused a [class-wide] disparate impact," *LUCHA*, 799 F.2d at 786, the plaintiffs have conceded that no single practice applied equally to the entire class.  Indeed, plaintiffs' individual allegations about the promotions they were denied are all over the map:

- Pamela McBride complains about a selection process that she claims was entirely objective:  She alleges that "for some positions," including the position of carman, which she sought, "the MBCR . . . relied exclusively on written pen and paper examinations."  (Compl. ¶ 38.)  She states, "on information and belief," that the carman's exam has disparate impact on minority applicants, and cannot be shown to be job-related. (Compl. ¶¶ 25-27.)

- Joyce Washington complains about a selection procedure that may have been entirely subjective:  She alleges that she applied for a foreman position in her department and then states, "on information and belief," that "MBCR did not use any objective testing or other system to select [that] position."  (Compl. ¶¶ 21-22.)

- Elaine DeRosa complains about different selection processes that she alleges varied with respect to the presence or absence of standards and the role of

9

interviews and testing:  She alleges that "during the last several years," she sought promotion to an unspecified number of jobs, that "most of the positions" she applied for "had no criteria for selection," and that "in some cases" she was not interviewed or tested.  (Compl. ¶¶ 17-18.)

- Ana Oliveira complains about a selection process that she claims lacked any criteria at all, whether subjective or objective:  She states that it is her "understanding" that "there were no standards, procedures or testing methods utilized to determine who would be promoted to" a foreman's position she sought in June 2007.  (Compl. ¶¶ 31-32.)

- Earl West, by contrast, makes no allegation at all about the selection criteria (whether subjective or objective) for the one position he sought in 2004, Station Supervisor.  (Compl. ¶¶ 34-35.)

According to these allegations, the selection process used to award promotions at MBCR did not always employ the same test, include the same objective criteria, or even include a similar mix of subjective and objective criteria.  There is no common, identifiable employment practice to be found in the plaintiffs' individual claims or anywhere else in the Complaint.

Even a class limited to MBCR employees who failed to receive promotions on the basis of subjective criteria would lack Rule 23(a) commonality because that class would encompass a wide variety of different jobs with different qualification requirements, would almost certainly entail varying degrees of subjectivity by different decision-makers, and the calculus needed to determine whether the use of subjective criteria had a legitimate business purpose would vary by functional responsibility.  *See Love v. Johanns*, 439 F.3d 723, 731 (D.D.C. 2006) (rejecting claim that "subjective decision-making processes require a district court to find commonality for purposes of class certification"); *Dukes*, 474 F.3d at 1231 ("[D]iscretionary decision-making *by itself* is insufficient to meet the plaintiffs' burden of proof [with respect to commonality].").

The Supreme Court has instructed that "an employer's policy of leaving promotions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct."  *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988).

MBCR does not concede that subjective decisionmaking could ever supply the class-wide employment practice or policy for a viable disparate-impact class.[1] Even if the Court accepted the notion that commonality could be based on subjective decisionmaking, however, before imposing liability, the court would still have to determine not only whether the process was subjective, but also whether members of a protected class of employees were selected at a statistically low rate, whether the subjectivity of the process caused the low selection rate and whether reliance on subjective assessments was nonetheless "job-related[,] consistent with business necessity, and not "merely . . . a 'pretext' for discrimination." *EEOC*, 48 F.3d at 594. None of these decisions can be made on a class-wide basis in this case. *See Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Under the commonality requirement, 'a class action must involve issues that are susceptible to class-wide proof.'"), *overruled in part on other grounds Ash v. Tyson Foods Inc.*, 546 U.S. 454 (2006); *see also Tilley*, 345 F.3d at 42 (Rule 23(a) requires enough similarity to give rise to *stare decisis*).

The Court will not be able to assess the subjectivity of MBCR's promotion processes on a class-wide basis. As discussed above, the plaintiffs have not alleged that promotions at MBCR were handled with the same degree of subjectivity across departments or job categories. Before even shifting the burden to MBCR to identify a legitimate business purpose, the Court would therefore have to assess for each job category, whether and to what extent the promotion process was subjective, whether Black and Hispanic employees were selected at a statistically low rate,

---

[1] As the Sixth Circuit noted in *Bacon,* "[a]n entirely subjective decision-making process may, theoretically, allow different kinds of employees to be in the same class - a question of class membership ([*General Telephone Co. v.] Falcon,* [457 U.S. 147, 160 (1982)])." 370 F.3d at 571-72. To satisfy the *Falcon* requirement, however, plaintiffs will at a minimum have to show  that "the… class members are all subject to the same, exclusively-subjective, decision-making process." *Id.* at 572. Here, assuming *arguendo*, that subjective decisionmaking could ever supply commonality, the complaint does not allege, much less show, that plaintiffs and the class they seek to represent, were subject to the "same, exclusively-subjective, decision-making process." Indeed,  the opposite is apparent on the face of the complaint.

231016.1

and whether the subjectivity *caused* the low selection rate.  *See Watson*, 487 U.S. at 992

(O'Connor, J.) (rejecting notion that a plaintiff could prove discrimination by showing only that

employer used a subjective selection process and that protected group was selected at a low rate

because, "[i]t is completely unrealistic to assume that unlawful discrimination is the sole cause of

people failing to gravitate to jobs and employers in accord with the laws of chance . . . ."); *Wards*

*Cove*, 490 U.S. at 656-57 ("[A] Title VII plaintiff does not make a case of disparate impact

simply by showing that, 'at the bottom line,' there is racial *imbalance* in the work force.").

        Even a finding that the subjectivity of the process used to control promotions to a

particular position or group of positions was uniform and caused a disparate impact on Black and

Hispanic employees would not support an award of class-wide relief.  The existence of a

disparate impact cannot alone justify imposing liability.  *See Watson*, 487 U.S. at 992

("[E]mployers are *not* required to avoid "disparate impact" as such . . . ."); *Langlois v. Abington*

*Hous. Auth.*, 207 F.3d 43, 49-50 (1st Cir. 2000) ("[U]nder statutes like Title VII and Title VIII,

merely to show a disparate racial impact is normally not enough to condemn. . . . ").  Rather the

Court would have to determine whether the degree of subjectivity employed bore a "manifest

relationship to the employment in question."  That determination varies by job responsibility.

*See Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977); *Lamphere v. Brown Univ.*, 875 F.2d 916,

919-20 (1st Cir. 1989).  As the Supreme Court has explained, whether subjective decision-

making is job related and therefore permissible depends upon whether the job being filled

"require[s] personal qualities that have never been considered amenable to standardized testing."

*Watson*, 487 U.S. at 999 (plurality opinion); *accord id.* at 1007 (Blackmun, J., concurring) ("The

proper means of establishing business necessity will vary with . . . the particular job for which

the selection process is employed.").  Because the Court cannot assess the appropriateness of

12

subjective decision-making on a class-wide basis or assess liability on grounds common to the class, the plaintiffs' disparate impact claims do not supply the commonality required by Rule 23.

### 3. The Plaintiffs' Disparate Treatment Claims Do Not Supply Commonality.

The plaintiffs' "disparate treatment" claims likewise fail to supply the commonality required by Rule 23(a). In a "disparate treatment" claim, "an individual alleges that an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin." *Watson*, 487 U.S. at 985-86. All "disparate treatment" plaintiffs are "required to prove that the defendant had a discriminatory intent or motive." *Id.* at 986.

The fact that more than one individual seeks to state a disparate treatment claim against a single employer is not alone enough to satisfy the commonality requirement of Rule 23(a); although the employer is the same, the inquiry in each individual claim will be "the reason for a particular employment decision," not a question common to the class. *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 876 (1984) ("Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination . . . ."). Rather, for individual disparate treatment claims to be aggregated into a class, the plaintiffs must show "that 'racial discrimination was the company's standard operating procedure – the regular rather than the unusual practice.'" *Id.* at 876. The plaintiffs in a "pattern or practice" case establish commonality by showing that the same practice of intentional discrimination "pervaded all of the [defendant's] challenged . . . decisions." *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (quoting *Bazemore v. Friday*, 478 U.S. 385, 398 (1986)); *see also Falcon*, 457 U.S. at 157 ("[T]here is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported

allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims."); *Cooper*, 390 F.3d at 716 ("Commonality . . . would have to be established by showing that the discrimination sustained was . . . part of an overarching pattern and practice of intentional discrimination on the part of the defendants . . . .").

To survive a motion to strike class allegations in a "pattern or practice" case, the plaintiffs must therefore plead "enough factual matter (taken as true) to suggest" that they will be able to establish the existence of a pervasive policy of intentional discrimination. *Twombly*, 127 S. Ct. at 1965. In the words of the D.C. Circuit Court of Appeals, the plaintiffs must "make a significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the employer's challenged employment decisions." *Hartman v. Duffey*, 19 F.3d 1459, 1470 (D.C. Cir. 1994) (class certification decision); *See Lumkin*, 161 F.R.D. at 482 (granting motion to strike class allegations because plaintiffs had offered nothing "other than counsel's belief" to show that discovery would reveal "a class-wide discriminatory animus").

The plaintiffs in this case have not pled any facts to suggest that they can make such a showing. The plaintiffs simply assert in conclusory terms "that there is a pattern and practice of discrimination in promotion and advancement at the MBCR, such that qualified minority applicants are often passed over . . . for advancement or promotional positions, and such positions are given to non-minority applicants, often without any system or method for deciding whom to select." (Compl. ¶ 37.) Their specific factual allegations, however, tend to negate that conclusion. As the named plaintiffs describe them, their individual claims arise from isolated

14

decisions presumably made by multiple individual decisionmakers.  *See Garcia*, 444 F.3d at 633

(holding that fact that plaintiffs' "claims arise from multiple individual decisions made by

multiple individual committees" defeats commonality).  The named plaintiffs have not plead

facts to even suggest that there is  any centralized, uniform policy or practice of intentional

discrimination that would weld their isolated claims into a class-wide claim.  *See Love*, 439 F.3d

at 727-32; *see also Reeb*, 435 F.3d at 644; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th

Cir. 1998).  They should therefore not be permitted to proceed with a class-wide claim for

disparate treatment discrimination.

      *C.*      *The Named Plaintiffs' Claims Are Not Typical of the Purported Class.*

      This purported class action also does not satisfy the typicality requirements of Rule 23(a).

"A class representative must possess the same interest and suffer the same injury as the class

members in order to be typical under Rule 23(a)(3)."  *Cooper*, 390 F.3d at 713.  As the Supreme

Court has explained:

> [I]t is not enough that the conduct of which the plaintiff complains will injure
> someone.  The complaining party must also show that he is within the class of
> persons who will be concretely affected.  Nor does a plaintiff who has been
> subject to injurious conduct of one kind possess by virtue of that injury the
> necessary stake in litigating conduct of another kind, although similar, to which
> he has not been subject.

*Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).  To ensure that absent class members' interests will

be protected, Rule 23 requires the Court to ensure "the named plaintiffs have incentives that

align with those of absent class members" by insisting that those named plaintiffs share a

specific injury with the class.  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

      The class allegations in this case should be stricken because the named plaintiffs have not

alleged facts to show that their injuries are typical of the broad class they seek to represent.  *See*,

*Lumpkin*, 161 F.R.D. at 482 (granting motion to strike class allegations); *Dodd-Owens*, 2007

231016.1

U.S. Dist. LEXIS 79068 (same). The plaintiffs seek to certify a class of all "minority employees of the MBCR who have been denied promotional or advancement opportunities since 2005." That class would presumably reach every craft, every department, and every non-entry-level job at MBCR.  According to their allegations, however, the named plaintiffs have experience working in only a small number of positions.  *See Reeb*, 435 F.3d at 645 ("[T]he typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class."); *Cooper*, 390 F.3d at 714 ("Because the plaintiffs asserted broad claims on behalf of a broad class, they were required to identify representative plaintiffs who shared those broad claims.").  Indeed, the only jobs that the named plaintiffs claim to have held are electrician, coach cleaner, car inspector, ticket agent and  train announcer. Every other job classification within the purported class would lack a named representative.

There is nothing in the Complaint to suggest that the specific practices that allegedly injured the named plaintiffs also applied in other job classifications or that any objectionable practices that applied in other classifications also injured the named plaintiffs.  *See Hartman*, 19 F.3d at 1472 (refusing to certify class on typicality grounds because "[w]hile plaintiffs' statistics may have demonstrated that discrimination against women applicants to the six USIA job categories was afoot, nothing in the record so far permits the additional inference that class members suffered a *common* injury.")   Indeed, there is nothing in the Complaint to suggest that the named plaintiffs know enough about the work performed and the promotional practices employed in other job classifications to identify which specific practices were objectionable in those contexts.  The typicality requirement of Rule 23(a) precludes the named plaintiffs from seeking to represent absent class members with whom they have so little in common.

231016.1

The variety among the named plaintiffs' claims is illustrative of the lack of typicality with respect to the broader class.  Earl West, for example, complains that he was not awarded a particular management job during a particular round of interviews.  (Compl. ¶ 34.)  He does not, however, identify any other Black or Hispanic employees as having been denied promotion to a management position under similar circumstances.  And, the other named plaintiffs do not fit that description.  They do not claim to have sought promotion to any management-level position, much less the position West sought.  West's claims, therefore, are not typical of a class containing the other named plaintiffs.

Similarly, Pamela McBride's claims are a-typical of even the named plaintiffs.  McBride claims to have been injured by an entirely objective decision-making process – the examination for the position of carman.  (Compl. ¶ 38.)  None of the other named plaintiffs claim to have been injured by that examination.  (Indeed, plaintiff Oliveira is a carman.)  McBride's claims are thus not typical of any class containing them.  Nor may the other named plaintiffs participate in a class action challenging the carman's examination.  *See Griffin v. Dugger*, 823 F.2d 1476, 1490-91 (11th Cir. 1987) (holding that a plaintiff "complaining of a subjective decisionmaking process could not represent [applicants] . . . who may have been victims of a discriminatory objective decisionmaking process"); *Hartman*, 19 F.3d at 1471 ("Normally, an employee who was not aggrieved by a particular test or hiring requirement lacks standing to challenge that test or requirement.").  Under these circumstances, the named plaintiffs have failed to establish typicality.  *See, e.g.*, *Lumpkin*, 161 F.R.D. at 482 (granting motion to strike class allegations on basis of typicality); *Dodd-Owens*, 2007 U.S. Dist. LEXIS 79068 (same).

###   D.   The Named Plaintiffs Are Not Adequate Representatives of the Purported Class.

The named plaintiffs also have not pled facts to show that they will fairly and adequately protect the interests of the class.  A named plaintiff "cannot maintain an action on behalf of class

17

members to redress an injury for which he has no standing in his own right." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 994 (1st Cir. 1996); *accord Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir.). The lack of typicality described above destroys the named plaintiffs' standing to raise the claims of much of the class they seek to represent. The plaintiffs' own allegations demonstrate that the selection processes at MBCR were different for different positions. (Compl. ¶¶ 18, 37, 38.) The named plaintiffs were not affected by unfairness in, and have no standing to complain about, selection processes to which they personally were not subjected. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (setting forth minimum requirements for Article III standing). They also have no incentive to vigorously prosecute claims with respect to those processes. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006) (explaining how typicality and adequacy requirements play critical role in assuring that named plaintiffs have the incentive to prosecute absent class members' claims); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (fact that absent class members needed to prove facts which the named plaintiff did not need to establish was "a legitimate reason to question" whether named plaintiff had adequate incentive to represent the class). They are therefore inadequate class representatives for a class broadly defined to include "every promotional or advancement opportunity [at MBCR] since 2005." *See Andrews,* 780 F.2d at 130-31 (upholding decision of district court rejecting a class composed of all applicants for manual laborer classifications at facility, where named plaintiff, who only sought the position of pipewelder, was inadequate representative of the broad class of manual laborers); *Bennett*, 2005 U.S. Dist. LEXIS 44117 (granting motion to strike class allegations of rejected applicant seeking to represent employees of defendant).[2]

---

[2] At least one of the named plaintiffs in this action is also inadequate because his individual claims fall outside even the broad

231016.1

**II.     The Plaintiffs' Claims Do Not Satisfy the Requirements of Rule 23(b).**

*A.     Plaintiffs May Not Proceed Under Rule 23(b)(2) Because The Appropriate Final Relief Relates Predominantly to Money Damages.*

The plaintiffs first seek to proceed under Rule 23(b)(2), which allows an action to be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  As numerous courts have recognized, "Rule 23(b)(2) does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Markarian*, 202 F.R.D. at 70-71 (internal quotation marks omitted).  The majority of Circuit Courts hold that monetary relief predominates in a Rule 23(b)(2) class suit unless it is incidental to requested injunctive or declaratory relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Coleman v. GMAC*, 296 F.3d 443, 447-50 (6th Cir. 2002); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580-81 (7th Cir. 2000). *But see Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 162-67 (2d Cir. 2001) (adopting ad hoc balancing approach); *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).

In this case, the plaintiffs seek compensatory and punitive damages, including damages for emotional distress.  Such damages would not "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *See Allison*, 151 F.3d at 412.  The calculation of such damages would be "dependent in a[] significant way on the

---

class the plaintiffs describe and are likely to be defeated by idiosyncratic affirmative defenses (statute of limitations). *See Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir. 2002) ("[A] class representative whose claim is time-barred cannot assert the claim on behalf of the class.")  Earl West was denied promotion in 2004, prior to the alleged class period.  He also faces a meritorious argument that his claims are time-barred . *See* Defendant's Motion to Dismiss filed simultaneously herewith.  As such, West lacks a claim encompassed by the class and is, therefore, an inadequate class representative. *See Stubbs*, 224 F.R.D. at 674-75 (granting motion to strike class allegations on basis of adequacy because named plaintiff's individual claims were subject of successful motion to dismiss).

intangible, subjective differences of each class member's circumstances." *Id.* at 415.  Under the standards adopted by a majority of the Circuit Courts, therefore, the final relief the plaintiffs seek relates predominantly to monetary damages and a class action may not proceed under Rule 23(a)(2).  *Id* ; *accord Reeb*, 435 F.3d at 651 ("[B]ecause of the individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class."); *Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 330-32 (4th Cir. 2006);  *Cooper*, 390 F.3d at 721.

> **B.**      ***Plaintiffs' Claims Do Not Satisfy the Requirements of Rule 23(b)(3).***

Finally, the plaintiffs ask this Court to certify a class under Rule 23(b)(3) which would require the Court to find, *inter alia*, "that the questions common to the members of the class predominate over any questions affecting only individual members."  The requirement of Rule 23(b)(3) "although reminiscent of the commonality requirement of *Rule 23(a)*, is far more demanding."  *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 506 (1st Cir. 2005).  Because this action fails to meet the more lenient standards of Rule 23(a), it also fails to meet the more stringent standards to proceed under Rule 23(b)(3).

## Conclusion

For each of the foregoing reasons, the Court should strike the class allegations from the Complaint.

MASSACHUSETTS BAY
COMMUTER RAIL COMPANY,
By its attorneys,


 /s/ Daniel S. Tarlow
Walter B. Prince, BBO# 406640
Daniel S. Tarlow, BBO# 552920

231016.1

Paige Scott Reed, BBO# 637905
Amy E. Serino, BBO# 643664
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
(617) 456-8000

231016.1

<u>CERTIFICATE OF SERVICE</u>

I, Daniel S. Tarlow, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.


  /s/ Daniel S. Tarlow              
Daniel S. Tarlow

231016.1