UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELAINE DEROSA, et al,                 )
    Plaintiffs,                       )
                                 )
          v.                            )      C.A. No. 07-11824-MLW
                                 )
MASSACHUSETTS BAY COMMUTER             )
RAIL COMPANY,                          )
    Defendant.                        )

MEMORANDUM AND ORDER

WOLF, D.J.                                          March 17, 2010

I.   INTRODUCTION

    This is a putative class action, brought by plaintiffs Elaine DeRosa, Joyce Washington, Pamela McBride, and Ana Oliveira, all of whom are employees or former employees of defendant Massachusetts Bay Commuter Rail Company ("MBCR").  Plaintiffs allege that Blacks and Hispanics have been discriminated against by the MBCR in its promotional process.

    Plaintiffs raise claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq. (Count I), Mass. Gen. Laws ch. 151B, §4 (Count II); and 42 U.S.C. §1981 (Count III).  They seek certification of a class of all Black and Hispanic MBCR employees who applied for, and were denied, promotions to certain positions from 2005 to the present.[1]

    First, plaintiffs assert a disparate treatment claim based on

---

[1] The positions in question do not include positions which are open only to members of certain unions.  The hiring criteria for such "bid" positions are established through collective bargaining with the MBCR, and applicants are selected according to negotiated guidelines.

alleged subjective, standardless decision-making in the MBCR's promotional process. In essence, plaintiffs allege that the MBCR's department managers effectively have complete control over who is promoted within their respective departments, subjectively deciding what each position's requirements or qualifications are, who is eligible to apply for each position, which applicants will receive an interview, and, ultimately, who will fill the position. Plaintiffs allege that this subjective promotional process is standardless and has resulted in disparate treatment of Blacks and Hispanics. Disparate treatment under Title VII occurs "where an employer has 'treated [a] particular person less favorably than others because of" a protected trait. A [plaintiff alleging] disparate-treatment . . . must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986 (1988)).[2]

---

[2] The legal standards for establishing a violation of Mass. Gen. Laws ch. 151B, §4 are the same as those for establishing a Title VII claim. See, e.g., Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 138 (1976); Trustees of Health and Hospitals of City of Boston, Inc. v. Massachusetts Comm'n Against Discrimination, 449 Mass. 675, 682 (2007). Therefore, while this Memorandum only discusses Title VII, the analysis is equally applicable to the ch. 151B, §4 claims.

In addition, "Title VII and [42 U.S.C.] §1981 claims are predicated on the same elements. . . ." Mosley v. Maytag Corp., 216 Fed. App'x 595, 596 (7th Cir. 2007) (citation omitted). Analysis of putative class claims under Title VII and 42 U.S.C. §1981 generally proceed in tandem. See, e.g., Allison v. Citgo

Second, plaintiffs assert a disparate impact claim based on the same subjective promotional process, alleging that this process had an adverse disparate impact on Black and Hispanic employees who sought promotion. See, e.g., Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292 (2d Cir. 1999) (noting that plaintiff employees' claims of discrimination through subjective components of company-wide employment practices "did not bar a finding of commonality under either the disparate treatment or disparate impact model"). Disparate impact occurs when a employer's facially neutral practices are, in fact, "'discriminatory in operation.'" Ricci, 129 S. Ct. at 2673 (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)). "In order to establish a prima facie case of discrimination based upon disparate impact, a plaintiff must show that a facially neutral employment practice had a significantly discriminatory impact." Andrews v. Bechtel Power Corp., 780 F.2d 124, 142 (1st Cir. 1985) (citations omitted).

Third, plaintiffs assert a disparate impact claim based on pre-employment tests which were used as qualifying exams for certain promotional positions at the MBCR. See Garrison v. Gambri, Inc., 428 F.3d 933, 936, 939-40 (10th Cir. 2005) (rejecting

_____

Petroleum Corp., 151 F.3d 402, 407, 426 (5th Cir. 1998) (denying certification for employment discrimination claims brought under both Title VII and §1981); Barabin v. Aramark Corp., No. 02-8057, 2003 WL 355417, at *1-2 (3d Cir. Jan. 24, 2003) (same). Therefore, the analysis of the Title VII claims in this Memorandum is also equally applicable to the §1981 claims.

plaintiffs' Title VII disparate impact claim based on testing); Bradley v. City of Lynn, 443 F. Supp. 2d 145, 148-177 (D. Mass. 2006) (considering whether a written civil service exam violated Title VII under a disparate impact theory).  At one point or another during the relevant time period, seven different tests were used as pre-employment qualifications for promotion to 15 different positions.  Plaintiffs allege that these tests, in most cases, addressed basic math skills and literacy, were not job-related, and had a disparate impact on Black and Hispanic applicants. Plaintiffs describe their testing claim as creating a potential "sub-class."

Three named-plaintiffs challenge the subjective decision-making process at the MBCR, and one challenges the MBCR's use of pre-employment tests.  Washington, Joyce, and DeRosa challenge the subjectivity of the MBCR's promotional process, while McBride challenges the testing.  Specifically, Washington challenges her failure to be promoted to Foreman I and Laborer positions.  DeRosa challenges her failure to be promoted to Help Desk, Foreman II, Locomotive Engineer, and Air Conditioning Technician positions. Oliveira challenges her failure to be promoted to Locomotive Engineer, Foreman I and Foreman II positions.  McBride challenges the MBCR's use of a pre-employment test in the Carman application process, which McBride contends prevented her from receiving the job on multiple occasions.  Notably, all of these named plaintiffs

work (or worked, in the case McBride, who is no longer employed by the MBCR) in the Mechanical Department, one of the MBCR's three departments.  The others are the Transportation and Engineering departments.

Plaintiffs seek injunctive relief, back pay, front pay, damages for emotional distress, and punitive damages.

Plaintiffs assert that class certification is justified because they meet all four requirements of Federal Rule of Civil Procedure 23(a), and the requirements of Rule 23(b)(2) as well.  A class certified under Rule 23(b)(2) must primarily seek injunctive relief. See generally Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998); Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001).  It is a mandatory class, from which "class members have no absolute right to opt-out." Allison, 151 F.3d at 412 n.7; see Palmigiano v. Sundlun, 59 F.3d 164 (Table), 1995 WL 378537, at *1 (1st Cir. 1995) (recognizing no automatic right to opt-out of Rule 23(b)(2) class).

Defendant argues that the requirements for class certification are not met.  As explained in this Memorandum, defendant's contention is correct.  Therefore, the motion for class certification is being denied.

II.  PROCEDURAL HISTORY

On May 13, 2008, the court denied the MBCR's motion to strike plaintiffs' class allegations.  At that hearing, the parties agreed

that bifurcation of discovery concerning class certification and the merits was appropriate.

In addition, plaintiffs then recognized the importance of statistics in securing class certification for both the disparate treatment claims relating to the MBCR's subjective promotional process, and the disparate impact claims relating to both pre-employment testing and the MBCR's subjective promotional process. On the issue of subjectivity, plaintiffs' counsel stated:

> Now, if there's no discrimination going on, then the defendants need not worry about that selective system because the statistics which - and we've retained a statistical expert and once we get to discovery, we'll crunch the numbers, then they have nothing to worry about.   There's no discrimination going on.   And notwithstanding the subjective nature of this hiring process, there won't be a statistical case of discrimination.

May 13, 2008 Tr. at 18. Plaintiffs' counsel made similar comments regarding pre-employment testing, stating:

> [S]o the [other] theory of our case is disparate impact, that the exams are not valid with EEOC standards and that they're not job related.   Again, that requires a statistical analysis.   There has to be a disparate impact or the fact that the exam is not job related doesn't matter.   So the discovery that we've been seeking all along, that would go to both class certification [and] the liability stage . . . would be the statistical information not just on how many minorities are in various positions and how many have applied for jobs, but what the selection rates have been.   By doing that discovery in the beginning, and I'm willing to agree to the bifurcated discovery . . ., you get at both issues: one, whether class certification is appropriate; and, two, whether there's a case to be made of a pattern or practice of discrimination for summary judgment purposes.

Id. at 21.

The parties subsequently engaged in extensive discovery related to the question of class certification.  On January 9, 2009, the court granted plaintiffs' request for an extension of time to complete discovery concerning class certification.  The court did so again on February 27, 2009.

Upon completion of that discovery, plaintiffs filed a motion for class certification.  It was supported by, among other things, an expert report written by Joel P. Wiesen, Ph.D (the "Wiesen Report").

The MBCR opposed that motion, supported by, among other things, an expert report written by Christopher Erath, Ph.D (the "Erath Report").  The MBCR also filed a Motion to Strike Portions of the Plaintiffs' Memorandum in Support of Class Certification, arguing that much of the evidence presented by plaintiffs in support of their motion for class certification was irrelevant, speculative, and inadmissible.

Plaintiffs opposed the Motion to Strike and filed a Reply to the MBCR's opposition regarding class certification.  The MBCR then filed a Sur-Reply on the issue of class certification.

A hearing on the pending motions was held on March 8, 2010.

III. THE STANDARDS FOR CLASS CERTIFICATION

"[D]istrict courts have broad discretion to grant or deny class certification."  McCuin v. Secretary of Health and Human

-7-

Servs., 817 F.2d 161, 167 (1st Cir. 1987).  Plaintiffs have the burden of proving that class certification is appropriate, and to do so they "must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 38 (1st Cir. 2003); see Fed. R. Civ. P. 23(a)-(b).  The court considers only admissible evidence in determining whether Rule 23's requirements are met. See Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 937-38 (7th Cir. 1989) (holding that the Rules of Evidence apply in class certification proceedings); Lewis v. First American Title Ins. Co., No. CV-06-478-S-EJL, 2010 WL 675230, at *4 (D. Idaho Feb. 24, 2010) (same); Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 269-70 (D. Mass. 2005) (adopting analytical approach taken in a Southern District of New York case which required a plaintiff to present admissible evidence for class certification) (citing DeMarco v. Lehman Bros., 222 F.R.D. 243, 247 (S.D.N.Y. 2004)); but see Bell v. Addus Healthcare, Inc., No. C06-5188, 2007 WL 3012507, at *3 (W.D. Wash. Oct. 12, 2007) (noting that "the Court is still not persuaded that it must apply the traditional rules . . . [to] evidence in support of class certification").

"Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." In re New Motor Vehicles

-8-

<u>Canadian Export Antitrust Litigation</u>, 522 F.3d 6, 19 (1st Cir. 2008) (citing Fed. R. Civ. P. 23(a)).

Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." However, Rule 23(b)(2) certification is not appropriate when money damages are the predominant relief that the plaintiffs seek. <u>See, e.g.</u>, <u>Allison</u>, 151 F.3d at 415; <u>Markarian v. Connecticut Mut. Life Ins. Co.</u>, 202 F.R.D. 60, 70 (D. Mass. 2001).

Ultimately, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." <u>Smilow</u>, 323 F.3d at 38. Accordingly, when considering disputed legal and factual premises for class certification, a district court may "probe behind the pleadings to formulate some prediction as to how specific issues will play out." <u>New Motor Vehicles</u>, 522 F.3d at 17. The First Circuit has recognized that "weighing whether to certify a [] class may inevitably overlap with some critical assessment regarding the merits of the case." <u>Id.</u> (citing <u>Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.</u>, 482 F.3d 372, 380 (5th Cir. 2007), <u>cert.</u> <u>denied</u>, 128 S. Ct. 1120 (2008)). While the district court must not "allow[] the defendant to turn the class

certification proceeding into an <u>unwieldy</u> trial on the merits," the court is not required "to put blinders on as to an issue simply because it implicates the merits of the case." <u>Id.</u> (internal quotation marks and citations omitted) (emphasis in original).

Courts have recognized the difficulty that Title VII plaintiffs confront in meeting the requirements of Rule 23(a) in both disparate impact and disparate treatment cases. <u>See, e.g.</u>, <u>Wagner v. Taylor</u>, 836 F.2d 578, 589 (D.C. Cir. 1987) (citing <u>Gen. Tel Co. of Southwest v. Falcon</u>, 457 U.S. 147, 159 n.15); <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 598 (2d Cir. 1986) (citing <u>Falcon</u>, 457 U.S. at 156-159 (1982)). As stated earlier, disparate impact occurs when a employer's facially neutral practices are, in fact, discriminatory in operation, and plaintiffs must show that practice had a significant discriminatory impact. <u>See</u> <u>Ricci</u>, 129 S. Ct. at 2673; <u>Andrews</u>, 780 F.2d at 142. Disparate treatment occurs when an employer has "treated [a] particular person less favorably than others because of a protected trait," and the plaintiff "must establish that the defendant had a discriminatory intent or motive for taking a job-related action." <u>Ricci</u>, 129 S. Ct. at 2672 (internal quotation marks and citations omitted).

While some courts formerly utilized an "across the board" approach to Title VII class certification that enabled commonality and typicality to be established by a putative class of minority employees "merely by virtue of an allegation that racial

discrimination had occurred," the Supreme Court in <u>Falcon</u> rejected this permissive standard. <u>Wagner</u> 836 F.3d at 588-89 (discussing <u>Falcon</u>, 457 U.S. at 157-59, 159 n.15).  In <u>Falcon</u>, the Supreme Court stated that "'the mere fact that an aggrieved plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on [] behalf of all possible [class] claims of discrimination against a common employer.'" <u>Wagner</u>, 836 F.2d at 589 (quoting <u>Falcon</u>, 457 U.S. at 159 n.15 (1982)).  The Supreme Court described the "wide gap between [] an individual's claim that he has been denied a promotion on discriminatory grounds . . . and [] the existence of a class of persons who have suffered the same injury . . ., such that the individual claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class." <u>Falcon</u>, 457 U.S. at 157.  As the Second Circuit has explained, "[t]he primary thrust of <u>Falcon</u> was that satisfaction of Rule 23(a) requirements may not be <u>presumed</u>." <u>Rossini</u>, 798 F.2d at 598 (emphasis in original).  The Supreme Court has affirmed this understanding of <u>Falcon</u>'s impact, stating, "<u>Falcon</u> thus holds that the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action." <u>Cooper v. Fed. Reserve Bank of Richmond</u>, 467 U.S. 867, 877 (1984).

Nevertheless, the requirements of Rule 23 may be met in Title

VII cases if plaintiffs present "[s]ignificant proof" of either "a biased testing procedure" or a "general policy of discrimination . . . as through an entirely subjective decisionmaking process." Wagner, 836 F.2d at 589 (citing Falcon, 457 U.S. at 158); see Caridad, 191 F.3d at 292 (recognizing that proof of disparate impact or disparate treatment across the class may justify class certification).

In performing rigorous Rule 23 analysis of Title VII employment discrimination claims, courts have found statistical evidence to be significant, if not essential, in holding that a putative class action meets the Rule 23(a) requirements of commonality and typicality. See, e.g., Boyd v. Interstate Brands Corp., 256 F.R.D. 340, 342 (E.D.N.Y. 2009) (citing Caridad, 191 F.3d at 292); McReynolds v. Sodhexho Mariott Servs., Inc., 208 F.R.D. 428, 441 (D.D.C. 2002) (citing Wagner, 836 F.2d at 592); see also Barry v. Moran, CV No. 05-10528-RCL, 2008 WL 7526753, at *12-14 (D. Mass. Apr. 7, 2008) (citing, among others, Falcon, 457 U.S. at 157-58). Statistical evidence of disparate treatment and/or disparate impact is significant because it can establish that a prima facie Title VII case exists across the class, obviating the need to show that "each class member is the victim of the discriminatory practice." Wagner, 836 F.2d at 592. As the Second Circuit explained in Caridad, when, as here, the employer's challenged "decision-making process is difficult to review because

of the role of subjective assessment, significant statistical disparities are relevant to determining whether the challenged employment practice has a class-wide impact." 191 F. 3d at 292.

Plaintiffs may bolster such statistical evidence with anecdotal evidence, which the Supreme Court has recognized can serve to bring "cold numbers convincingly to life." International Broth. of Teamsters v. United States, 431 U.S. 324, 339 (1977); accord Dukes v. Wal-Mart, 509 F.3d 1168, 1182 (9th Cir. 2007).

Ultimately, a combination of statistical and anecdotal evidence can establish that common questions of law and/or fact exist across the putative class, and that the "disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim[s] as to th[ose] of other members of the proposed class." Caridad, 191 F.3d at 292-93 (internal quotation marks and citation omitted) (explaining that commonality and typicality analyses often merge and that statistics are important for establishing both).

IV. ANALYSIS

In this case, although plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1), they have not established the required commonality, typicality, or adequacy. Therefore, class certification is not justified because all four of Rule 23(a)'s factors are not met. See Smilow, 323 F.3d at 38. In addition, plaintiffs have failed to establish the predominance of

injunctive relief in their complaint and, therefore, class certification under Rule 23(b)(2) - the only 23(b) prong under which plaintiffs have sought certification - is not justified for this reason as well. <u>See</u> <u>id.</u> (stating that at least one prong of 23(b) must be met, in addition to all four 23(a) factors).

A. <u>Rule 23(a)</u>

1. <u>Numerosity</u>

The numerosity requirement of Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While this requirement "is often referred to as 'numerosity,' . . . it might more properly be called the 'impracticability' requirement, because the inquiry called for by Rule 23(a)(1) often involves more than merely counting noses." <u>McLaughlin v. Liberty Mut. Ins. Co.</u>, 224 F.R.D. 304, 307 (D. Mass. 2004) (citations omitted).  Nevertheless, the "first step in the inquiry under Rule 23(a)(1) is . . . assessing the size of the putative class." <u>Id.</u> "[D]istrict courts may draw reasonable inferences from the facts presented to find the requisite numerosity." <u>McCuin v. Secretary of Health & Human Servs</u>, 817 F.2d 161, 167 (1st Cir. 1987).

Here, plaintiffs rely on the Wiesen Report to establish that there are at least 110 members of their putative class: this is the number of Blacks and Hispanics who applied for promotional positions at the MBCR during the relevant time period.  Classes of

-14-

40 or more have been found to be sufficiently numerous under Rule 23(a)(1). See In re Relafan Antitrust Litigation, 218 F.R.D. 337, 342 (D. Mass. 2003); McAdams v. Massachusetts Mut. Life Ins. Co., No. C.A. 99-30284-FHF, 2002 WL 1067449, at *3 (D. Mass. May 15, 2002).   The 110 number may be too high because it fails to eliminate those individuals who would not be class members, such as those who received the promotion for which they applied.   However, the estimate is not "purely speculative," and it provides adequate evidence that there are at least 40 potential class members, a number that would be impracticable for joinder.   Cf. Makuc v. American Honda Motor Co., Inc., 835 F.2d 389, 394 (1st Cir. 1987) (affirming district court's dismissal of class action because, among other reasons, the court could have concluded that the size of the putative class was purely speculative).   In view of the fact that a court "need not know the exact number of proposed class members to find numerosity satisfied," the court concludes that plaintiffs have met their burden to establish numerosity. McIntosh v. Irwin Union Bank and Trust, Co., 215 F.R.D. 26, 35 (D. Mass. 2003).

This is, however, the only element of the Rule 23 analysis on which plaintiffs have succeeded.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "Commonality

focuses on the relationship of common facts and legal issues among class members." Dukes, 509 F.3d at 1177 (citations omitted).  Here, plaintiffs have provided neither the statistical evidence which is usually required to establish commonality under Rule 23(a)(2), nor adequate anecdotal evidence.  See Boyd, 256 F.R.D. at 342; McReynolds, 208 F.R.D. at 441; Barry, 2008 WL 7526753, at *13.

The Wiesen Report deals primarily with general statistics regarding the MBCR's workforce demographics.  For example, it states that Blacks and Hispanics are, on average, paid less than Whites within each of the MBCR's three departments (Mechanical, Engineering and Transportation), and across the MBCR as a whole. In addition, the Wiesen Report states that Blacks and Hispanics comprise 18% of the Mechanical Department, but only 14% of Transportation, an allegedly significant distinction because Transportation employees make more, on average, than those in the Mechanical Department.  However, these general observations about workforce demographics are insufficient to justify a class action regarding promotional practices.  See, e.g., Wagner, 836 F.2d at 593 ("Statistics laying bare a racially unbalanced workforce do not . . . show a policy of discrimination manifested in the employer's promotional practices.").

Not only are the Wiesen Report's statistics insufficient to establish a common issue of discrimination in promotion across the MBCR, the MBCR's Erath Report affirmatively and persuasively

refutes plaintiffs' allegations that such discrimination exists. The Erath Report, using the same raw data available to plaintiff's expert, presents  relevant analyses of selection rates across the MBCR which demonstrate that there is no statistical evidence of discrimination in the company's promotional practices.  More specifically, the Erath Report exmplains that: (1) <u>aggregating all departments</u>, there is no statistically significant difference in the selection rate among Whites and Blacks and Hispanics; (2) <u>within each department</u>, there are no statistically significant differences in the selection rates, and, in fact, the Transportation and Engineering departments have marginally higher selection rates for Blacks and Hispanics; and (3) <u>among the 33 relevant jobs titles</u>, no position favored Whites in a statistically significant manner, and, in fact, 67% of those positions marginally favored Blacks and Hispanics. Erath Report at 3-6.

Furthermore, the Wiesen Report's analysis of the MBCR's pre-employment tests' alleged disparate impact is also insufficient to establish class-wide commonality.  Wiesen analyzed only one pre-employment test's impact on one position, the Reading Index Test when used for the Carman position within the Mechanical Department. There, Wiesen found a statistically significant adverse impact on Black and Hispanic applicants, causing him to speculate that analysis of this test's impact on other positions "may well show adverse impact" on Blacks and Hispanics, too. Wiesen Report at ¶5.

However, Erath actually analyzed the selection rates for all positions using this test and credibly refutes Wiesen's speculation. His examination of the eight positions which used the Reading Index Test found overall selection rates at near parity, with five of the eight showing Black and Hispanic selection rates exceeding those for Whites. Erath Report at 5-6.

Plaintiffs' other evidence is insufficient to overcome the dearth of statistical support. First, the MBCR Climate Assessment Survey, which plaintiffs present for the purpose of showing the existence of an "old boys network" at the MBCR, fails to meet the standard for admissibility. The document itself states that it is based on a statistically insignificant response rate, meaning it does not "rest[] on a sufficiently trustworthy foundation." First Marblehead Corp. v. House, 541 F.3d 36, 41 (1st Cir. 2008) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). As class certification decisions must be made based on admissible evidence, see, e.g., Mars Steel Corp., 880 F.2d at 937-38, the court gives no weight to the Climate Assessment Study.

Second, the Holland & Knight Report, which plaintiffs also submit to establish the existence of a discriminatory "old boys network," may also be inadmissible hearsay. Nevertheless, even if it is admissible under Federal Rule of Evidence 801(d)(2) as the admission of a party-opponent, the survey does little to help plaintiffs establish the presence of a discriminatory environment

at the MBCR because much of the report explains the positive steps that the MBCR has taken to address concerns about workforce diversity that it inherited from the railway's previous operator, Amtrak. H&K Report at 2-3.

Third, the anecdotal information presented in plaintiffs' depositions and affidavits, and the affidavits of several other putative class members, is largely hearsay and speculation. In addition, several allegations of discriminatory hiring have been contradicted by the evidence produced in discovery.

In essence, "[e]ven taking at face value the Plaintiffs' anecdotal evidence, the statistical evidence shows that" Blacks and Hispanics across the spectrum at the MBCR "have not faced [] difficulties" like those alleged by the individual plaintiffs, indicating class certification is inappropriate. Carpenter v. The Boeing Co., No. 02-1019-WEB, 2004 WL 2661691, at *4 (D. Kan. Feb. 24, 2004) (decertifying disparate impact class based on lack of commonality and typicality, as demonstrated by statistical evidence showing no class-wide discrimination).

Ultimately, having "rigorously tested the evidence submitted by both sides[,]" the court finds no common question of fact or law uniting the plaintiffs with their putative class members. New Motor Vehicles, 522 F.3d at 25. Therefore, the commonality requirement is not met.

3.   <u>Typicality and Adequacy</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The representative plaintiff[s] satisf[y] the typicality requirement when [their] injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff[s'] claims and those of the class are based on the same legal theory." <u>In re Credit Suisse-AOL Sec. Litig</u>, 253 F.R.D. 17, 23 (D. Mass. 2008) (citation omitted).  "The typicality inquiry 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" <u>In re Boston Scientific Corp. Sec. Litig.</u>, 60 F. Supp. 2d 275, 282 (D. Mass. 2009) (quoting <u>In re Prudential Ins. Co. Am. Sales Litig.</u>, 148 F.3d 283, 311 (3d Cir.1998)).

The commonality and typicality analyses "tend to merge", since "[b]oth serve as guideposts for determining whether . . . the named plaintiff[s'] claim[s] and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." <u>Falcon</u>, 457 U.S. at 157 n.13.  In addition to merging with commonality, typicality has also been found to merge with Rule 23(a)(4)'s adequacy requirement. <u>See, e.g.</u>, <u>Credit Suisse-AOL</u>, 253 F.R.D. at 22-23.

Rule 23(a)(4) requires that "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "This entails a two-part showing: 'The moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" Boston Scientific Corp., 604 F. Supp. 2d at 282 (quoting Andrews, 780 F.2d at 130).

Here, for the reasons stated earlier regarding commonality, plaintiffs have not established typicality or adequacy because their claims do not have sufficient factual or legal issues in common with those of the putative class, as demonstrated by the lack of evidence regarding class-wide discrimination.  Therefore, the plaintiffs claims are not typical of the claims of putative class members' and, as a result, they would not be adequate representatives of the putative class. See Falcon, 457 U.S. at 157 n.13 (describing the merging of these factors); Deiter, 436 F.3d at 466 (same); see also Carpenter, 2004 WL 2661691, at *4 (decertifying class due to lack of commonality and typicality, based on statistical evidence).

Moreover, there are features of several of the named plaintiffs' individual claims which affect both the typicality of their claims and their adequacy as class representatives. "Both typicality and adequacy may be defeated where the class

representatives are subject to unique defenses which threaten to become the focus of the litigation." Credit Suisse-AOL, 253 F.R.D. at 23 (citing In re Salomon Analyst Metromedia Litig., 236 F.R.D. 208, 213 (S.D.N.Y. 2006)).

DeRosa, for example, violated the MBCR's drug-screening policy in 2003. This serious infraction rendered her ineligible for a Foreman II position when she applied in 2005 because the MBCR's regulations prohibited promotion of applicants who had failed a drug-screening in the previous 24 months.  The same failed drug-screening made DeRosa ineligible for the Locomotive Engineer position to which she applied in 2005, because Federal Railway Administration regulations prohibited consideration of Locomotive Engineer applicants who had failed a drug-screening in the previous 60 months.  Moreover, in 2007, when she was no longer disqualified from consideration for Foreman II based on the failed drug test, DeRosa was promoted to that position.  Therefore, the MBCR has unique defenses to DeRosa's individual claims. See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (noting general principle that named-plaintiff subject to individual defenses is inappropriate for class certification); New York City Transit Authority v. Beazer, 440 U.S. 568, 587 n.31 (1979) (finding city transit system's "legitimate employment goals of safety and efficiency require the exclusion of all users of illegal narcotics, barbiturates, and amphetamines, and

of a majority of all methadone users"). Finally, DeRosa's claims regarding the Air Condition Technician position are irrelevant to this action, because it is a union position governed by a collective bargaining agreement, not a promotional position included in this putative class action.

Oliveira is also atypical and inadequate. She testified at her deposition that, with respect to all of the positions she has challenged, she was not denied promotion based on her race. When asked whether she believes she did not get a Foreman I position because of her race, she responded, "No, I don't believe that." Oliveira Dep. at 78. When asked if race was a motivating factor in her failure to be promoted to Foreman II, Oliveira stated that those promoted were more qualified than she, and she could not say that race was the reason she did not get the job. Id. at 134-39. In addition, while she challenged the MBCR's failure to allow her to sit for the Carman's exam as being racially motivated, she stated during her deposition that it was her absenteeism that caused the MBCR to disqualify her. Id. at 13. Similarly, when asked if race was the reason she did not get a Locomotive Engineer position, she said,"No I don't think I didn't get that due to my race.  I'm thinking I didn't get it because of my qualifications, being a [coach-]cleaner."[3] Id. at 70.

_____

[3] In addition, Erath found that the MBCR's hiring for the Locomotive Engineer position reflects a statistical disparity favoring Blacks and Hispanics. Erath Report at 5.

The stigma surrounding coach-cleaners, regardless of race, is another factor that undercuts the typicality and adequacy of several plaintiffs: three of the four named-plaintiffs are or were coach-cleaners, and both Oliveira and Washington testified at their depositions that there was a stigma surrounding coach-cleaners that made advancing within the MBCR difficult for them, regardless of race.  Accordingly, it is doubtful that the coach-cleaner plaintiffs' claims are typical of putative class members' claims in the Mechanical Department, much less those of individuals in Engineering and Transportation.  Of the named-plaintiffs, only DeRosa, a long-time electrician, never worked as a coach-cleaner.  However, as noted earlier, she is subject to a unique defense because of her drug use.

Washington, in addition to having been a coach-cleaner, is inadequate to represent the broad putative class because in her deposition she affirmatively expressed a lack of interest in applying for any positions other than Foreman I in the Mechanical Department, and, as explained earlier, no statistical evidence supports an assertion that the alleged discrimination she may have faced is common across the MBCR.  Moreover, her allegations about being "discouraged" from applying for a Laborer position are irrelevant because Laborer is, like coach-cleaner, an entry-level position in the Mechanical Department, and this putative class action challenges promotional decisions, not entry-level hires.

With regard to the potential testing sub-class, McBride is the only named-plaintiff who alleged in her Massachusetts Commission Against Discrimination charge that she took and failed a pre-employment test within the relevant time period. She too is vulnerable to unique individual defenses. First, she too failed a drug test. See Graham v. Long Island R.R., 230 F.3d 43, 44 (2d Cir. 2000) (holding that even if plaintiff could demonstrate that failed drug test proffered by defendant as ground for dismissal was in error, that showing would not demonstrate that reliance on test was pretext for discrimination). In addition, she is no longer employed at the MBCR. This renders her an inadequate representative for a putative class seeking certification under Rule 23(b)(2) because an injunction is the primary relief requested and, because she would not benefit from such relief, she may not ardently advocate for it. See Drayton v. Western Auto Supply Co., No. 01-10415, 2002 WL 32508918, at *4-5 (11th Cir. Mar. 11, 2002) (finding former employees had not established "a real and imminent threat of future discrimination" and therefore had no standing to seek injunctive relief under Rule 23(b)(2)); Wiegele v. FedEx Ground Package System, Inc., No. 06-cv-1330, 2008 WL 410691, at *7 (S.D. Cal. Feb. 12, 2008) ("When former employees seek prospective injunctive relief, courts often decline to certify the class under Rule 23(b)(2), finding that the plaintiffs' primary interest is monetary relief.").

Moreover, even if she were an adequate representative under Rule 23(b)(2), McBride has challenged only one test's applicability to one job, which is insufficient to find her "typical" of putative class members who took seven tests, for 15 different positions, across three departments. See, e.g., Marable v. District Hosp. Partners, L.P., C.A. 01-02361 (HHK), 2006 WL 2547992, at *4-6 (D.D.C. 2006) (declining, on grounds of typicality and commonality, a putative class action regarding the disparate impact of a single test when, among other things, the named-plaintiffs were all current employees who sought to represent a class containing external applicants, as well, making the named-plaintiffs' legal and factual posture distinct from other potential class members'). Proving disparate impact would require a test and job-specific analysis. See, e.g., Watson, 487 U.S. at 998-99 (describing possible defenses in disparate impact testing claim, which include showing that a particular test is "job-related" to a particular job). A single named-plaintiff cannot properly form the foundation of a testing sub-class as diverse as the one proposed here. See Reeb v. Ohio Dept. of Rehabilitation and Correction, 435 F.3d 639, 645 (6th Cir. 2006) (noting typicality is not achieved when plaintiffs do not represent an adequate cross-section of class claims). Even if McBride were to establish that the Reading Index Test had an unlawful, discriminatory impact on her ability to become a Carman, it would not be sufficient to prove that same test

had such an impact with respect to any other position, nor that different tests had such an impact on other positions. See, e.g., Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007) (finding that the "typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily anybody else's claim'").

Ultimately, typicality is not proven for the putative class attacking the MBCR's subjective promotional process, or for a sub-class attacking its pre-employment testing, because the "named plaintiffs do not represent an adequate cross-section of the claims [potentially] asserted by the rest of the class." Reeb, 435 F.3d at 645. An alleged "general policy of discrimination is not sufficient to allow a court to find commonality or typicality." Id. That is all the plaintiffs have presented.

In view of the foregoing, plaintiffs' claims are not typical. Nor are the plaintiffs adequate class representatives. Therefore, certification of their putative class is not justified under Rule 23(a)(3)-(4).

B.   Rule 23(b)(2)

As indicated earlier, Rule 23(b)(2) allows certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This is a putative

civil rights class action with an uncertain number of class members. The First Circuit has recognized that such cases are, in general, "uniquely suited" to Rule 23(b)(2) certification. <u>Yaffe v. Powers</u>, 454 F.2d 1362, 1366 (1st Cir. 1972); <u>accord</u> <u>Rolland v. Cellucci</u>, No. C.A. 98-30208-KPN, 1999 WL 34815562, at *9 (D. Mass. Feb. 2, 1999). However, as also explained earlier, Rule 23(b)(2) "'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.' . . . Rather, plaintiffs may avail themselves of the rule only if injunctive or declaratory relief is the predominant remedy they seek." <u>Rothwell v. Chubb Life Ins. Co. of America</u>, 191 F.R.D. 25, 29 (D.N.H. 1998) (quoting Rules Advisory Comm. Note to Amended Rule 23, 39 F.R.D. 98, 102 (1966)); <u>see</u> <u>Allison</u>, 151 F.3d at 415.

Here, plaintiffs argue that injunctive relief predominates because they would have brought this case even if no money damages were available to them. The plaintiffs testified to that effect in their depositions, and stated that their primary motivation in this action is to achieve a change in the MBCR's policies that will enhance minority promotion rates. Plaintiffs' attempts before filing suit to effect change at the MBCR through the Commuter Rail Workers for Equal Rights and the Lawyers Committee for Civil Rights provide some support for the sincerity of their statements.

The MBCR argues that plaintiffs' assertions of sincerity are insufficient to demonstrate injunctive relief's predominance. The

MBCR contends that Rule 23(b)(2) certification is unjustified because plaintiffs seek compensatory and punitive damages, which are not appropriate for classes certified under Rule 23(b)(2). <u>See</u> Second Amended Complaint at 8, ¶¶1-4.

The parties dispute the proper legal standard for evaluating whether injunctive relief is "predominant" when, as here, the putative class seeks injunctive relief, as well as compensatory and punitive damages. There are two approaches to this question, neither of which has been adopted by the First Circuit. <u>See</u> <u>Mogel v. Unum Life Ins. Co. of America</u>, 646 F. Supp. 2d 177, 183-184 (D. Mass. 2009).

The majority approach, which began with the Fifth Circuit's decision in <u>Allison</u>, has been followed by at least four other circuits. <u>See, e.g.</u>, <u>Barbarin v. Aramark Corp.</u>, No. 02-8057, 2003 WL 355417, at *1-2 (3d Cir. Jan. 24, 2003); <u>Murray v. Alexander</u>, 244 F.3d 807, 812 (11th Cir. 2001); <u>Coleman v. GMAC</u>, 296 F.3d 443, 447-50 (6th Cir. 2000); <u>Lemon v. Int'l Union of Operating Eng'rs, Local No. 139</u>, 216 F.3d 577, 580-81 (7th Cir. 2000). Under this approach:

> [M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive relief. . . . By incidental, we mean damages that flow directly from liability to the class <u>as a whole</u> on the claims forming the basis of the injunctive or declaratory relief.

<u>Allison</u>, 151 F.3d at 415 (emphasis in original).

At least one judge in the District of Maine has utilized the

_Allison_ approach. _See_ _Ramirez v. DeCoster_, 194 F.R.D. 348, 352 (D. Me. 2000) (citing _Allison_, 151 F.3d at 415-418)).   Under this approach, where plaintiffs, as here, seek compensatory and punitive damages certification is not available under Rule 23(b)(2). _Ramirez_, 194 F.R.D. at 352.[4]   The court in _Ramirez_ explained that compensatory damages "are legal remedies requiring _individualized_ jury determinations of damages, dependant on intangible, subjective differences of each worker's circumstances, and are [therefore] inappropriate for a 23(b)(2) class action," which is designed to provide common relief to the class as a whole. _Id._ (emphasis added) (citing, among others, _Allison_, 151 F.3d at 415-17).   The same is true for punitive damages, the calculation of which "would necessarily relate both to the reprehensibility of [defendant's] conduct and to the compensatory damages awarded to each plaintiff." _Id._ (citing, among others, _Allison_, 151 F.3d at 417-18).

The minority approach comes from the Second Circuit's decision in _Robinson_, 267 F.3d at 164, in which the court declined to follow _Allison_, and instead adopted an _ad hoc_ analysis that can, in certain circumstances, lead to certification under Rule 23(b)(2) of classes seeking compensatory and/or punitive damages, in addition to injunctive relief.   As the Second Circuit explained it:

---

[4]   Under this approach, back pay in a Title VII case is distinguishable from compensatory or punitive damages because it is perceived as "an equitable remedy similar to other forms of affirmative injunctive relief permitted in (b)(2) class actions. . . ." _Allison_, 151 F.3d at 415 (citation omitted).

> [T]he district court may allow (b)(2) certification if it
> finds in its 'informed, sound judicial discretion' that
> (1) 'the positive weight or value [to the plaintiffs] of
> the injunctive or declaratory relief sought is
> predominant even though compensatory or punitive damages
> are also claimed,' and (2) class treatment would be
> efficient and manageable, thereby achieving an
> appreciable measure of judicial economy.'

267 F.3d at 164 (2d Cir. 2001) (citation omitted). Under this

approach, which has also been adopted by the Ninth Circuit, a

district court should "at minimum, satisfy itself [that] . . . even

in the absence of a possible monetary recovery, reasonable

plaintiffs would bring the suit to obtain the injunctive or

declaratory relief sought." Robinson, 267 F.3d at 164; Dukes, 509

F.3d 1186 (quoting Robinson, 267 F.3d at 164).

While the First Circuit has not adopted either approach, it

has cited to Ramirez without any negative commentary on its

reasoning. See Estados Unidos Mexicanos v. DeCoster, 229 F.3d 332,

335 n.2 (1st Cir. 2000). Moreover, judges in the District of

Massachusetts have cited to Ramirez favorably, indicating some

support for the majority approach here. See Tilley v. The TJX

Companies, Inc., 212 F.R.D. 43, 50 (D. Mass. 2003), rev'd on other

grounds, 345 F.3d 34 (1st Cir. 2003); but see Mogel, 646 F. Supp.

2d at 183-184 (analyzing, and denying, certification under both

Allison and Robinson).

Ultimately, the court concurs with the majority approach and

finds that the very nature of compensatory and punitive damages

make Title VII claims which assert them unamenable to Rule 23(b)(2)

certification. <u>See</u> <u>Allison</u>, 151 F.3d at 416-418;  <u>see</u> <u>also</u> <u>In re</u> <u>Monumental Life Ins. Co.</u>, 365 F.3d 408, 419-20 (5th Cir. 2004) (stating that Title VII claims seeking compensatory or punitive damages are not amenable to certification under 23(b)(2) due to the inevitable individualized assessment of those damages, but that other legal claims for damages might be certifiable, if easily calculable across the class); <u>Reeb</u>, 435 F.3d at 651. Accordingly, even if this putative class action were certifiable under Rule 23(a), certification under 23(b)(2) would be inappropriate because plaintiffs seek compensatory and punitive damages which necessarily "implicate[] the subjective differences of each plaintiff's circumstances." <u>Allison</u>, 151 F.3d at 417; <u>see</u> <u>also</u> <u>Reeb</u>, 435 F.3d at 651; <u>Mogel</u>, 646 F. Supp. 2d at 185 (denying class certification due to failure to meet Rule 23(b)(2) under <u>Allison</u> and <u>Robinson</u>, despite all 23(a) factors having been met).

In addition, with regard to the potential for a sub-class concerning the MBCR's pre-employment tests' allegedly disparate impact on Blacks and Hispanics, there is another reason to deny certification under Rule 23(b)(2).  McBride, the only named-plaintiff with standing to represent this claim, is no longer employed by the MBCR.  After this suit was brought, McBride quit in the wake of two failed drug-screenings and a serious safety violation.  Therefore, she would benefit only from monetary relief because she is not seeking promotion any longer.  Accordingly, her

claim would not satisfy either the <u>Allison</u> or <u>Robinson</u>'s Rule 23(b)(2) standard.   Therefore, is it not appropriate to certify a sub-class focusing on MBCR's pre-employment tests' alleged disparate impact. <u>See</u> <u>Mogel</u>, 646 F. Supp. 2d at 184; <u>Walsh v. Nevada Dept. of Human Resources</u>, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding that individual who was no longer employed by defendant did not have standing to request injunctive relief under the Americans With Disabilities Act); <u>Drayton</u>, 2002 WL 32508918, at *4-5; <u>Wiegele</u>, 2008 WL 410691, at *7; <u>Jimenez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 241, 250 (C.D. Cal. 2006).

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   The MBCR's Motion to Strike Portions of Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification, and to Strike Supporting Materials (Docket No. 77) is ALLOWED with respect to the Climate Assessment Survey and otherwise DENIED.

2.   Plaintiffs' Motion for Class Certification (Docket No. 71) is DENIED.

3.   As requested by plaintiffs, case is STAYED for 45 days, for the purpose of allowing potential plaintiffs to move to intervene.

4. Plaintiffs shall, by May 3, 2010, inform the court whether they wish to pursue their individual claims.

-33-

5.    If plaintiffs wish to pursue their individual claims, a conference to schedule this case for completion shall be held on May 17, 2010, at 3:00 p.m.


                              /s/ MARK L. WOLF
                              UNITED STATES DISTRICT JUDGE